The second case in which we'll hear oral argument this morning is number 06-1102 Ortho-McNeil Pharmaceuticals v. Caraco Pharmaceuticals Mr. Pritikin. Good morning. Good morning. I just want to confirm here, you've saved five minutes of your time for rebuttal, correct? Yes, sir. Okay. Go ahead whenever you're ready. May it please the Court. As you know from our October 6th letter to the Court, the patent in suit reissued on August 1st of this year. There was no substantive amendment to Claim 6, which is the claim that is now at issue. And all of the prior art from this litigation and from related litigation in New Jersey, as well as the arguments that were made, were before the Patent Office in connection with the reissue. This is the only patent on the drug that is at issue. It is a combination of known analgesics. But as the Court is aware, the Food and Drug Administration treats a drug like this as a new drug with a complete NDA that has to be filed on it. And that's because of the possible interactions of the two drugs. Well, and that's the virtue of this drug, apparently, the new synergy between the two elements. Yes, sir. We're almost like here stepping back into Hilton Davis on these 1.5. How far can you go? Well, the question here, the Court below granted summary judgment both as to literal infringement and on the Doctrine of Equivalence. And we think we're entitled to a trial. That's why we're here. We want to go back and have our day in court. On literal infringement, we think it was an incorrect claim construction. And the extraordinary thing about the Doctrine of Equivalence ruling is, and I don't believe there's precedent for this anywhere, where the defendant is conceded and there is an explicit admission that they have no defense under the function, way, result test. Well, that's if one doesn't accept the claim construction. I mean, no, they say it's the same function, way, result, but they're very strict. They don't go below 1 to 7.5. Isn't that it? No, no, not on Doctrine of Equivalence, Your Honor. On Doctrine of Equivalence, with respect to the accused product at the ratios that they're planning to sell it, they have conceded on the record that the function, way, result test is satisfied. Oh, no. I apologize. You're correct, Mr. Priggin, but they say you can't reach that because of prosecution history. Yes, but the prosecution history, the only thing in the prosecution history was the original patent on tramadol, which is one of the two ingredients. And there's an example disclosed in there of four different active ingredients in it, where there is a ratio of tramadol and acetaminophen in a 1 to 10 ratio. But we're not trying to reach that so that in terms of what happened during the prosecution, even of the original patent or in connection with the reissue, there was never a disclaimer of a ratio of 1 to 7.1, 1 to 7.5, 1 to 8.67. There simply is not a disclaimer of that. Are you waiving your literal infringement argument then? No, sir. Not at all. We've gotten off on the doctrine of equivalence, and actually I was going to circle back and start there. I'm bothered by the statement that was made by your expert, Dr. Stansky, saying that the able to determine an upper bound and lower bound for 1 to 5 weight ratio, based on that analysis, in my opinion, a ratio of about 1 to 5 would not be statistically different from a ratio up to and including 1.71. Yes, sir. And a ratio down to and including 1.36. Yes, sir. So if that's the case submitted by your own expert, how would 1.75 literally infringe? Well, at the time he submitted that declaration, the issue of whether it reached 1 to 7.5 was not before the court. In other words, we did the expert reports in the district court and the declarations were submitted. And then it was after that that they informed us that they had changed the lower bound of the ratio in the product to 1 to 7.5. So Dr. Stansky had not specifically addressed that question in the declaration. But he was specifically addressing the bound or the up bound, wasn't he? Yes. The lower bound of 1.5 ratio, weight ratio? Yes. So what was he talking about then? Yes. What Dr. Stansky was saying is that if you look at the patent and you can actually look at the graph, the isobologram in it, and you'll see error bars there going both directions from the data points. And what Dr. Stansky was doing was pointing to those and saying that in this patent, 1 to 5 is statistically indistinguishable from the range of ratios from 1 to 3.6 to 1 to 7.1. And that one reading the patent would know that. That is the intrinsic evidence here, of course, that we're dealing with. The error bars are right there. 1.5, the ratio of 1 to 5 is statistically indistinguishable from those other ratios. The claim uses the term about 1 to 5. And a fair reading of that claim would extend it beyond what is statistically indistinguishable from 1 to 5. The other point that is important to keep in mind is. . . Excuse me a minute. Why is that? What is it that's fair about that? Well, keep in mind what the patent tells us is that these are the error bars. They tell you what is statistically the same and different. It is a 95% confidence interval. So there is latitude for going beyond that. That is to say what we're dealing with when we talk about a range of 1 to 3.6 to 1 to 7.1 is a 95% confidence interval. But why is it fair to go beyond that? Because the patent uses the term about. And if you look through the precedent of this court, uniformly the term about has been interpreted in a way that it does not ascribe strict numerical limits to a claim term. There are numerous cases. Indeed, I'm not sure there is a case. But there usually are some boundaries in our cases, though. When you say about or approximately, there are some boundaries that usually are placed on it. But, Judge Schall, that would be the fact issue for trial. And that's where I think the district court would be correct. But no, but this is claim construction, isn't it? No. In other words, the question is that the claim says about 1.5, 1 to 5, 1.5. And as a matter of claim construction, the judge has to determine what are the outer limits of that, either up or down. Now, I respectfully disagree. I think the correct way analytically for this case to have been handled by the district court would have been for the district court to have construed the term about to mean approximately. And the rest of this would be subsumed under the factual inquiry that the parties would present. That is to say, we would present evidence that the product, the accused product, pharmacologically, in terms of synergy, in terms of other aspects, is functionally the same. It is the same as the product at a ratio of 1 to 5. That would have been the factual inquiry. But wouldn't that be really, and please object, and I'm sure you will, but if the judge had construed about to mean approximately, he's really just, I think, kicking to the jury the claim construction issue. I mean, and we have said that the first step is to construe the claims, and that's for the court. The Supreme Court has agreed with that. And then the finder of fact, whether it's a judge or a jury, determines infringement. So, I mean, I think the judge had to put here some parameters on what about meant as a matter of claim construction. Actually, if you look at the cases, the Federal Circuit cases that have used claim terms like about, what you will find in looking at those cases is that the court has steadfastly resisted imposing strict numeric limits and substituting those for the term about. In those cases, there's a phrase. The phrase is the criticality of the parameter. In using that phrase, talk to us about the 1 to 5 and how far you can go, how critical is that parameter? Well, the outer limits of it are something the court doesn't really need to test because the issue in this case is whether the accused product comes within it. The rest would be for another day. It would be speculation. What we know is that the accused product is going to have a ratio as low as 1 to 7.5. That's undisputed. And the question, and they have stipulated that they would sell product across the full range of what is permitted by the ANDA. So the only question the court needs to confront is whether a ratio of 1 to 7.5 could fairly be encompassed within the scope of approximately 1 to 5. We know that there is a range that's included. We know those are 95% confidence levels. We know that there isn't a bright division at the outer edges of it. We think that this is an issue that should have been tried on the issue of whether or not the product at a ratio of about 1 to 5 would be covered. I see that I'm into my rebuttal time. I haven't gotten to the doctrine of equivalence, but I'm happy to save that for later. Yeah, why don't we let Mr. Hurst speak, and then you'll have your full rebuttal. All right, thank you. Good morning, Your Honors. Mr. Hurst, good morning. What is the name of your client? Carrico. Carrico, okay. May it please the court, I'm here on behalf of Carrico. My name is Jim Hurst. Two issues, literal infringement and the doctrine of equivalence. I'm going to be very brief on literal infringement. What Mr. Pritikin is seeking is a rewrite of the claim, not an interpretation of the claim. How do you know that? Because in other words, this is what they're asking for. About 1 to 5 means, based on statistical analysis, about 1 to 3.6 to about 1 to 7.1. That's not a claim interpretation. That's a rewrite. Our claim interpretation for the term about 1 to 5, it relies entirely on the plain language of the claims. The plain language of the claim says a weight ratio of about 1 to 5. So what do you do? You look at the two weights because that's what the claim asks you to do. You look at the weight of one ingredient. You look at the weight of the other ingredient. And you ask yourself, is that about 1 to 5? You do not. You do not, which is what Ortho is suggesting. Do a statistical analysis of pharmacological results in mice to determine the meaning of something as simple and as plain as a weight ratio of 1 to 5. Only in patent claims would about mean a mile instead of two miles, right? That's probably right. That's part of the problem. Let's try to be a little bit more exact in some of these claims. We wouldn't have half of the litigation. Probably so. Three quick points. I say you don't look at pharmacological data. Ortho says you do look at pharmacological data. I say look at the weights and you're done. Here are my three points. First, during reissue, the reissue proceedings, Ortho distinguished 1 to 5 from 1 to 10 based on weight alone. There's no discussion of pharmacological properties and results in mice. Second, in the patent itself, Ortho distinguishes between ratios as close as 1 to 3 to 1 to 5 and 1 to 5 to 1 to 5.7. They treat them as different ratios, which tells you they're not the same ratio, and that contradicts Ortho's current argument. Finally. Mr. Pritikin suggests that you should argue that to the jury and not to the judge doing claim construction. Well, clearly there is absolutely no dispute whatsoever about my product. Our target ratio is 1 to 8.67. Some tiny percentage could potentially get as low as 1 to 7.5. No dispute about that. It's set in stone. It's concrete. So the only issue for the court is the meaning of about 1 to 5, and that is a pure issue of law. Finally, I said there was three points. What they're saying is let's expand about 1 to 5 to all ratios that have the same analgesic effect. That's what their position is. That's from page 29 of their brief. Here's why that doesn't make any sense. A ratio, the analgesic effect you achieve from a ratio depends on the absolute dosages themselves, not just the ratio. It depends on the absolute dosages. So think of it this way. One milligram to five milligrams is a 1 to 5 ratio, but so is 50 to 250 milligrams, but you get drastically different analgesic effect. In Table 1 of the patent, for instance, they do these mouse tests, and they run a series of tests at 1 to 5, and at the lower dosages, 7 out of 30 of the mice experience pain relief. At the higher dosages, 30 out of 30 of the mice experience pain relief. But you go down the table, and you can pick any ratio, picking 1 to 800. At the lower doses, 9 out of the 30 mice experience pain relief. At the higher doses, 30 out of 30 mice experience pain relief. So under orthos theory, is 1 to 800 about 1 to 5? I think so. That doesn't make any sense. Just let me ask you, I want to make sure on this. You accept the district court's claim construction, correct? I gather there was some quibble with it, but you basically, for purposes of this appeal, accept the 1 to 3.6 to 1 to 7.1, correct? I do not, Your Honor. I think what the district court said was that about 1 to 5 goes no further, it's no greater than the range from 1 to 3.6 to 1 to 7.1, and he didn't have to determine whether it was actually more narrow. The words the district court used was, about 1 to 5 is no greater than 1 to 3 to 6 to 1 to 7.1. And that's important. Why? For the most basic reasons in a summary judgment motion, as Judge McKinney is well familiar with, if there's no factual issue, the party moving for summary judgment gets summary judgment. Here, my product's minimum range at the far outside is 1 to 7.5. There is no evidence in the record that under any circumstances that about 1 to 5 ever reaches past 1 to 7.1 all the way up to 1 to 7.5. Sam, what's your complaint with this claim construction? My only complaint is that I don't necessarily have a complaint. I think basically he didn't give any precision to it, so I wouldn't suggest that it extends all the way out to 1 to 3.6 to 1 to 7.1. I'd rather what I would say, that when you're talking about two weights and you're talking about precise dosages for patients, when you say about 1 to 5, you're talking about a really narrow range outside of 1 to 5. You say you win under his construction, but it should be narrow. Exactly. What do you think is the strongest piece of intrinsic evidence that supports the judge's construction or what you would say should have been a narrower construction? The claim language itself, which says a weight ratio of about 1 to 5. A weight ratio is a weight ratio. You look at the weights, period. When you look at the weights, people understand that dosing for patients is precise. It's not a wide range from 1 to 3.6 to 1 to 7.1. If that's what Ortho wanted, it should have claimed it. It did not. I'm going to turn to the Doctrine of Equivalence. I just want to focus on two points, claim vitiation and the prior art. Mr. Pritikin said, I've admitted that my product infringes under the function-way-result test. That's not quite true. What I did say was that for purposes of summary judgment, Ortho's enormous theory, function-way-result test, sure it meets my product, but it also meets the prior art's 1 to 10. It also meets all the way out to 1 to 1,600. Aren't you almost necessarily, and you probably know more about the world of the pharmaceutical products and the approval process, but don't you almost have to have the same function-way-result to meet the bioequivalent requirement? Essentially that's probably true, Your Honor, yes. Although it really depends on what the particular element is focused on. Here the element is focused on synergy. I don't have to show that my product has the exact same synergy to get approval, so I guess I would disagree, actually. Let's talk about my claim vitiation argument here, which is the district court accepted. This is controlled by Friedman, Seeding, and Tronzo. It's the same case. You take the other side's theory and you ask yourself, if taken to its logical conclusion, does it erase a meaningful element in the claim? Here it certainly does. Their theory extends not only past our product, 1 to 8.67, but it hits the prior art 1 to 10 and it keeps on running. Under the law, that's not a proper doctrine of equivalence theory. So what Mr. Pritikin does on appeal, he says, no, there might be special synergy at 1 to 8.67 and 1 to 5, and therefore it would stop short of 1.10, the prior art, and it wouldn't keep running. That's the theory. He presents it as a failure of my proof because I haven't shown that the same synergy exists everywhere. It's a failure of Ortho's proof. I went in on summary judgment in my opening brief and I said, look, if you accept this theory of equivalence, you can't stop. You're going to go over the prior art to 1 to 10. You're going to go all the way up to 1 to 50. There was never any argument below that there was any special synergy at 1 to 5 and 1 to 8.67. And if there's no special unique synergy at that level below 1 to 10, that means their theory is overbroad and it erases the element. Why didn't they make the argument below that there's special synergy below 1 to 10? There's a good reason for that. There simply is not special synergy below 1 to 10. On the contrary, what the patent says is that the highest levels of synergy are above 1 to 10. The most preferred range is 1 to 19 and 1 to 50. The more preferred range is 1 to 19 to 1 to 800. That's from column 4, lines about 3 through 10. What that means is a notion that there's some unique synergy below 1 to 10, the patent says the exact opposite. It says that what that means, and if you apply their theory of equivalence, you do run past 1 to 10, you run all the way up to 1 to 800 at least, and in my view, according to the expert reports, all the way to 1 to 1,600, and that erases a meaningful limitation. To show you this, if you take out figure 1 in the patent, it's A121, they explain why you get more synergy at 1 to 19 to 1 to 15. Dr. Smith, in his expert report, A613 and A626 to A627, explains this kind of graph. We talked about this in our response brief. At A21, you're going to see a line of additivity. What page is it? It's A121. You're going to see a line of additivity, and then below that, you're going to see a curved line, and this is Ortho's representation of what the synergy is. What Dr. Smith explains is that the level of synergy turns on the distance between the curved line and the straight line of additivity line, so the greater the distance, the greater the synergy. If you look at the left-hand side, you'll see 1 to 5. That's the ratio of 1 to 5, and then if you move right where the distance starts to get greater, you'll see their preferred range, 119 to 150, all the way up to 1,800, where the distance gets longer. What that means is that this new argument they're making on appeal, they never mention this 3% figure they keep focusing on appeal. Never once in their hour-long argument to the district court, never once in their 30-page brief. What that means is that this special synergy theory they're coming up with now doesn't work because it still eliminates the 1 to 5 limitation. I have 3 1⁄2 minutes. I want to go to a different legal limitation on the doctrine of equivalence. Well, going back to that figure there, 1 to 5 is really at the top, though, isn't it? Yeah, it is. The line at the top is 1.57? Yeah, they have 1.57 and 1.5 you'll see as well. By the way, they're different points in the graph. They are different points on the graph. If you measure the difference between the dark curve line and the straight line of additivity line, it's shorter than if you measure the distance between, let's say, the 1 to 19 range and the line of additivity line. What Dr. Smith explains in the pages I've cited is that the greater the distance, the more synergy you get. That's right. Which means that there's nothing special about synergy below 1 to 10. In fact, it's better higher. It's better if you go higher. That's right. Which means it erases the limitation. The prior art. There's two legal. I mean, I already have four legal limitations in my brief, but I want to focus on the prior art just briefly. Remember, Ortho got the claim reissued by saying 1 to 5 is different from 1 to 10. Okay? So normal limitation in the doctrinal equivalence is, look, you can't run all over the prior art. They say now a claim, this hypothetical claim they're arguing for, stopping just short, not moving a hundredth of a milligram beyond, 1 to 8.6, which is my product. They're saying that's not obvious over flicks 1 to 10. Last month in DISTAR, this court said obviousness requires the application, requires the application of common sense and common knowledge, and that's all I'm asking for is common sense. A ratio of 1 to 8.6, my product, compared to 1.10, the prior art, it's only a 1.2% smaller level of acetaminophen. 1.2%. When they're arguing infringement in their brief, they say 6.3% is a subtle difference in degree. Well, that's five times greater than the difference between flick and the hypothetical 1 to 8.6 claim. So doesn't that mean it's only a subtle difference in degree? Of course that's what it means. So how do they get around this? Well, they argue, look, flick talks about 1 to 10, and nobody would ever move that ratio down towards 1 to 8.6. They'd only move it up above 1 to 10, despite that subtle difference. Well, that's nonsense. Two things. One is the patent itself says flick, A342 at a column 11, 52 through 57. Of course, by variation and calculation of the ingredients, tablets and other compositions are prepared containing lower or higher amounts. Second, the dose in the example is 25 milligrams of tramadol. That's a low dose. So to move from 1 to 10 to 1 to 8.6, you only have to move the tramadol dose from 25 milligrams to 29 milligrams. The same patent, same column, teaches you examples with 50 milligrams, 75 milligrams, and 100 milligrams of tramadol. And, in fact, it says the preferred range is 75 to 100. I see that I'm running out of time. If I may have 10 seconds? Yes. Just finish your sentence there first. In the end, this is just not an appropriate case for the doctrine of equivalence. They intentionally drafted a very narrow claim to 1 to 5. That is the only element, the 1 to 5, that they say creates patentability. It would be inequitable to now allow them to expand the claim to a product that sits on top of and right just to the edge of the prior art, especially on a doctrine of equivalence theory that reaches both the prior art and our product equally. Thank you, Your Honors. Thank you. Mr. Pritikin? Mr. Hurst had an additional 30 seconds or so, so we'll let you go between five and six minutes if you need that for your rebuttal. All right. Let me turn to the doctrine of equivalence. And if, for the sake of argument, one accepts the district court's claim construction, then it has an upper bound of 1 to 7.1. That means the product is 87.65% acetaminophen. Their product at 1 to 7.5 is going to have 88.24% acetaminophen. That is less than a 1% difference. It's not surprising that he has conceded the function way result test, given the closeness of this. But that also bears on the question of vitiation. Because if you look at the vitiation cases, like Friedman's seating or Tronso or some of the others, what was happening is that the patentee was trying to capture something that was really quite different from what was in the claim. And there was a dispute about whether the function way result test was satisfied, a big dispute about whether that was satisfied in those cases. And the concern of this court legitimately in those cases was that if you extend the claims to reach something that is very different, a different shape from what is actually called out in the claim, you're vitiating the claim limitation. But there is no precedent for suggesting that moving from 87.65% to 88.24% vitiates a claim limitation. There is no authority, either in the precedence of this court or indeed even in the district court opinions. Now, the vitiation argument that was concocted by the defendants below was based on a gross misrepresentation of what our position was. We never argued. We never argued that theory of equivalence that they are attributing to us. It's not in our briefs in the district court. It is not in the oral argument in the district court. It was specifically denied there. We never said that the reason that this is equivalent is simply because of synergy. It just isn't true. And one can look at the record in the district court, and in particular one can look at Dr. Stansky's declaration and expert report that were submitted, where he provided testimony that these products would demonstrate no substantial difference in analgesic effect. He talked about synergy, but he also said more broadly that these products would, and I'm quoting, demonstrate no substantial difference in analgesic effect. And that's in the appendix at page 467 where he said that. Now, that is significant, and, again, if one is going to apply common sense here, we never argued and wouldn't argue that something that is almost entirely acetaminophen, which is quite different from an opioid-like drug like Tramadol, if you had a ratio of 1 to 1,600, no one is going to argue that that is going to have the same analgesic effect. And we wouldn't be trying to assert the doctrine of equivalence against something that is very far removed. That was not the theory of equivalence, and the record here was sufficient, clearly sufficient, given Stansky's declaration, for us to be entitled to a trial on the question of the doctrine of equivalence. This is the Abbott Labs case all over again, Abbott Labs versus Dye. This case cannot be distinguished from that. It came up on summary judgment. The question there was whether a claim limitation of 90 percent could be extended to 94 percent under the doctrine of equivalence. The district court said, no, it will vitiate the limitation because we could go all the way to 99 percent. And in that case, unlike this one, the patent use expert had actually said that it would go to 99 percent. But isn't the prior art really a limitation on claim and the doctrine of equivalence? Prior art is a limitation, absolutely, Your Honor. You're correct about that. That was not considered by the district court below. So isn't that really what we have here? Well, we may or may not. The district court didn't talk about that below at all. He simply bypassed that, his opinion, and rested it entirely on vitiation. Now, if we get to the question of the doctrine of equivalence, the doctrine of equivalence is limited by the prior art. And then we're into the Wilson Sporting Goods case. And the question is, what is the hypothetical claim? And is there a hypothetical claim that would cover the accused product and not reach the prior art? None of this was done by the district court. The question that would then be presented is whether the disclosure in the Flick patent would render obvious a composition that has the ratio of the accused product. We put in evidence from Dr. Stansky, and there's a great deal in the record on this, on why the Flick patent would not motivate you to go to a lower ratio. They put in nothing. Nothing. The only evidence in the record on this point is the testimony of Dr. Stansky that one would not be motivated to lower the ratio below 1 to 10. And I can explain very briefly why that is, Your Honor. The example that is in the Flick patent that everything is based on has four ingredients in it. It's tramadol, it's acetaminophen, it's ethoxybenzamide, which is like acetaminophen, except that it's carcinogenic and can't be sold, and a barbiturate as well. Now, what Dr. Stansky explained is that, first, no one today would be motivated or at the time of this invention to make that tablet because ethoxybenzamide couldn't be used at all. But if you were, what does that teach? It certainly doesn't teach going below a ratio of 1 to 10. Remember, it has the ethoxybenzamide in it along with the acetaminophen. And that is also a weak analgesic. And what Dr. Stansky explained is if you were trying to make something, something that is akin to that composition, you wouldn't just ignore the ethoxybenzamide. You've got to do something with it. And that a person of skill looking at it would substitute additional acetaminophen. You're going to put something into it. There's no teaching, no suggestion as to why you'd substitute more tramadol. The ethoxybenzamide is more like the acetaminophen. And so if it would lead you anywhere, it would lead you to higher ratios going north from the 1 to 10. Therefore, there is nothing in the Flick patent that would motivate one to make something that has a ratio lower than 1 to 10. Now, we put in expert testimony on this. The record is devoid. Everything that has been offered by the other side was simply attorney argument. If the court wants to reach the issue of whether the prior art limits this, our request would be that this be remanded to the district court for full consideration of that issue, which is not in the record at this time. Thank you, Mr. Pritigan. First, thank you. The case is submitted.